IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CASE NO. 1:23-cv-00193

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>APPROXIMATELY $110,270.86 IN FUNDS DERIVED FROM A CHECK FUNDED BY TRUIST BANK ACCOUNT XXXXXX9774, SUCH ACCOUNT HELD IN THE NAME OF, OR BY OR FOR THE BENEFIT OF, HEIDI KING. | **COMPLAINT FOR FORFEITURE *IN REM*** |

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

## INTRODUCTION

1. This is a civil action *in rem* pursuant to 18 U.S.C. §§ 981(a)(1)(C). Procedures for this action are mandated by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, to the extent applicable, 18 U.S.C. §§ 981, 983, and 984, and the Federal Rules of Civil Procedure.

1

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned $110,270.86 in funds derived from a check funded by Truist Bank Account XXXXXX9774, such account held in the name of, or by or for the benefit of, Heidi King (seized funds hereafter identified as "the Target Funds"; account hereafter identified as "Target Account"). In or about March 2023, King voluntarily turned over the check funded by the Target Account to the United States Secret Service ("USSS") and USSS deposited the check in a holding account, resulting in the Target Funds. The Target Funds constitute or are derived from proceeds traceable to violations of Title 18 U.S.C §§ 1341 (Mail Fraud), 1343 (Wire Fraud) and 1344 (Bank Fraud).

3. This Court has jurisdiction over this action commenced by the United States under 28 U.S.C. § 1345 and over this action for forfeiture under 28 U.S.C. § 1355(a).

4. As set forth more fully below, Heidi King ("King") acted as a U.S.-based money mule for one or more unknown individuals ("UI"). A money mule is a person whose bank account acts as a conduit between a victim of a financial fraud scheme and the criminal who perpetrates the fraud scheme. As such, the account receives the funds that originated from the victim and routes them elsewhere, often to the fraudster perpetrating the scheme. Many money mules know or should know of their role in a crime. King, the money mule here, was purportedly acting under

2

the guise of an online romantic relationship with a UI. At the direction of a UI, King opened one or more accounts, including, but as noted herein, not limited to, the Target Account at Truist Bank. Thereafter, the accounts, including the Target Account, received funds from a variety of fraud victims. King transferred some funds, in the form of multiple wire transfers, from the accounts to various locations, while some funds remained in the Target Account. Ultimately, Truist Bank closed the Target Account and provided a check representative of the account balance to King. In or about March 2023, when law enforcement approached King, she relinquished the check to the United States Secret Service ("USSS"), and USSS, acting pursuant to a signed Agreement to Surrender Property, deposited the check, resulting in the Funds held in the Western District of North Carolina.

## THE FRAUD AND MONEY MULE ACTIVITY

*The Initial Duke Energy Investigation*

5. In November 2022, a Duke Energy Investigator contacted the Charlotte-Mecklenburg Police Department ("CMPD") and USSS in regard to an account held or operated by Heidi King, a resident of Morganton, North Carolina, in the Western District of North Carolina.

6. Duke Energy discovered that, on August 8, 2022, a UI opened a Duke Energy stock account at Duke Energy's website. The UI opened the account using the identity of Heidi King, including identifiers such as her sensitive personal

3

information and North Carolina address.

7. Around roughly the same time-period, a UI also gained unauthorized access to the Ally Bank account of an individual identified herein as "Victim SZ," a resident of Florida. Thereafter, the UI caused a $100,000 bank draft from Victim SZ's Ally Bank account to be deposited into the Duke Energy stock account opened via King's identifiers and caused the account to be used to buy Duke Energy stock.

8. Around roughly the same time-period, a UI organized a company named Aegoniam Int., LLC through Zen Business, an online business creation website. The UI also used King's name and home address to incorporate Aegoniam Int., LLC through the North Carolina Secretary of State.

9. Around roughly the same time-period, a UI requested sale of the Duke Energy shares through Duke Energy's website. The sale of the stock was valued at $88,901.10 at the time.

10. Duke Energy honored the stock sale request and mailed a $88,901.10 check payable to King at King's address in Morganton, NC. King received the check and deposited it into her personal Truist Bank account (hereafter, "King Truist Account 4775").

11. At some point, Duke Energy's bank, Wells Fargo, notified Duke Energy that the Ally Bank customer whose bank draft was used to buy the Duke Energy stock claimed that the stock purchase was made without the account holder's

4

authorization. Ally Bank successfully refuted the $100,000 unauthorized bank draft paid to Wells Fargo, causing an actual loss to Duke Energy in the amount of $88,901.10 (in the form of the Duke Energy check mailed to King's home address and the check having been negotiated).

*Interview of King*

12. On March 8, 2023, following investigation of the Duke Energy incident, USSS conducted a non-custodial interview of King at her home in Morganton. King provided information as follows.

13. King advised that, at some point, King met someone online who became her online romantic partner. King believed that the partner resided outside of the United States. In October of 2022, upon discussion with the partner, King opened the Target Account.

14. Specifically, King advised that her partner asked her to open the Target account after her partner incorporated a business in NC. The partner purportedly needed King to open the Target Account so that the partner could transfer funds into the Target account for what the partner represented to King was a real estate investment company.

15. King claimed that all the transactions that she conducted were at the request of the individual who King believed to be her romantic partner. However, King admitted to paying for small personal expenses from funds in King's Truist

5

Back accounts.

16. King denied knowing that a Duke Energy stock account was opened in her identity or requesting that Duke Energy stock be sold from a Duke Energy stock account in her identity. King stated that she believed the $88,901.10 check that she received in the mail represented legitimate funds obtained by her online partner. King advised that she was directed to deposit the check into a personal bank account at Truist Bank and subsequently, on behalf of her partner, forward funds to Kraken, a cryptocurrency platform.

17. King stated that she believed the funds that were deposited into her Truist Bank accounts were from her partner and/or were from people with whom her partner had legitimate business financial transactions; King denied knowing that any of the funds were from victims of financial fraud schemes or knowing that she was being used as a money mule by her partner.

18. King's activity is indicative of a fraud and money mule scheme wherein a UI exploits, dupes, and/or recruits an individual online to operate accounts for the UI. Further, as described below, the account activity involving the Target Account reflects the movement of fraud proceeds.

19. King stated that her Truist Bank accounts were closed by the bank, and that when her Target account was closed on December 23, 2022, King received a check in the amount of $110,270.87 which had been in her possession since

receiving the check.

20. King voluntarily surrendered the check to the USSS and signed an Agreement to Surrender Property.

***Subsequent Investigation of the Sources of Funds into King's Accounts***

21. Following the Duke Energy investigation of the fraud related to Victim SZ, as well as the interview of King wherein she provided information indicative of fraud and money mule activity, USSS continued investigation of activity in accounts controlled by King. The investigation revealed the following.

22. One or more UIs used multiple different schemes to obtain victim funds and to convince additional victims to send funds to multiple bank accounts, including King's Truist Bank accounts.

23. Those schemes included online romance schemes whereby one or more UIs fraudulently solicited victims to provide funds so that assets that were purportedly frozen could be released, funds to pay for purported legal fees, and funds to help purportedly sick family members. The UIs who perpetrated the scheme or schemes established fake profiles via online dating websites and other social media platforms. The UIs identified and targeted potential money mules and victims who exhibited certain characteristics (frequently, but not always, elderly, widowed, and/or divorced women who were lonely and new to the world of online dating) and then established online relationships with them. The criminals then used social

engineering methods to exploit victim weaknesses and vulnerabilities, and subsequently convinced them to send money. These schemes took place over months, or even years, as the criminal UIs obtained more and more money from victims. For example, law enforcement identified the below victims, among others.

24. Victim CL, a 72-year-old female from San Bruno, California, was involved in an online romance scheme in which she met an individual on the website service, "Silver Singles." The individual purported to be a fund manager and requested that Victim CL send funds to an account for an investment. Victim CL wired $15,000 from her Bank of America account into King Truist Account 4775. These funds were never returned to the rightful owner or, to the knowledge of law enforcement, used for investments.

25. Victim MH, a 68-year-old female from Fredericksburg, Virginia, was introduced online, through her friend's supposed attorney, to an individual. The individual requested funds related to five contractors who purportedly needed help to pay construction job site contractor's fines via Bitcoin. Victim MH wired $15,000 from her Navy Federal Credit Union account into King's Truist Account 4775. These funds were never returned to the rightful owner or, to the knowledge of law enforcement, used for anything related to contractor fines.

26. Victim EP, a 77-year-old female from North Canton, Ohio, was involved in an online romance scheme in which she met an individual on Silver

Singles. The individual purported to be a financial advisor and requested that Victim EP send funds to help fund oil deals. The individual also advised Victim EP that the individual needed funds in order to obtain release of $11,000,000 from the Bank of England. Victim EP wired a total of $159,000 from EP's JP Morgan Chase and USAA Federal Savings bank accounts into King's Truist Account 4775. These funds were never returned to the rightful owner or, to the knowledge of law enforcement, used to fund oil deals or obtain release of $11,000,000.

27. Victim MB, a 68-year-old female from Durham, North Carolina, was involved in an online romance scheme with an individual whom she met online. The individual requested funds, purportedly because his mother passed away and a tax lien was placed against his mother's home. The individual advised Victim MB that the tax lien needed to be paid in order to keep the home. Based on this representation, Victim MB wired $100,000 from her Wells Fargo account into King's Truist Account 4775. These funds were never returned to the rightful owner or, to the knowledge of law enforcement, used to pay a tax lien.

28. Victim BH, an 88-year-old female from Eloy, Arizona, was involved in an online romance scheme with an individual whom she met online through a friend. This individual purported to be an attorney. The "attorney" requested funds to help a sick family member who was purportedly in the hospital, held against his/her will, and needed to be released. This "attorney" also requested assistance with releasing

9

Case 1:23-cv-00193   Document 1   Filed 08/01/23   Page 9 of 13

$11,000,000 which was supposedly held in Victim BH's name at the Bank of England. Victim BH wired $130,000 from her trust at Oregon Community Credit Union to the Target Account. Victim BH also wired a total of approximately $120,000, via an entity identified herein as TW Group, to the Target Account. These funds were never returned to the rightful owner or, to the knowledge of law enforcement, used to fund the release of a sick family member or obtain release of $11,000,000.

29. Victim DW, a 57-year-old male from Eloy, Arizona, became involved in the online scheme through his neighbor, Victim BH, identified above. Victim BH sent funds for Victim DW and purportedly for an investment, and on behalf of the TW Group, to the Target account. Victim DW also wired a total of $100,000 from DW's account into the Target Account. These funds were never returned to the rightful owner or, to the knowledge of law enforcement, used for investments.

30. In summary, bank records reveal that, between July 2022 and November 2022, King's combined bank accounts received multiple wire deposits from multiple bank accounts that totaled approximately $454,000. Of this total of $454,000, approximately $324,000 was deposited into King's Truist Account 4775 and approximately $130,000 was deposited into the Target Account. As noted above, in December 2022, Truist closed the Target Account and turned over a check to King, which ultimately resulted in the Target Funds.

## CONCLUSION

31. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Funds vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

2. Judgment be entered declaring the Funds to be condemned and forfeited to the United States of America for disposition according to law; and

3. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Funds as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 1st day of August, 2023.

DENA J. KING
UNITED STATES ATTORNEY

**s/Benjamin Bain-Creed**

FL Bar Number 21436  
Assistant United States Attorney  
Suite 1650, Carillon Building  
227 West Trade Street  
Charlotte, North Carolina 28202  
Telephone: (704) 344-6222  
Facsimile: (704) 344-6629  
Email: Benjamin.bain-creed@usdoj.gov

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

## VERIFICATION

Taurence Dickens deposes and says under penalty of perjury:

I am a Special Agent with the United States Secret Service and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_____
Taurence Dickens
Special Agent
United States Secret Service